Robert A. Freeman (SBN 192076)
TUNG & ASSOCIATES, APLC
445 S. Figueroa St., Suite 2500
Los Angeles, CA 90071
Tel: (626) 416-4668
Fax: (626) 416-4669
Email: robert.freeman@tunglaw.com

Attorneys for Plaintiff
ERIC MARTINEZ

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC MARTINEZ, an individual,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>MARCOS WOODS, officer #11139, in his individual and official capacities; JOHN DOE 1, in his individual and official capacities; ROBERT LUNA, Chief of Police, in his official capacities; LONG BEACH POLICE DEPARTMENT; CITY OF LONG BEACH;<br><br>　　　　Defendants. | Case No.:<br><br>COMPLAINT FOR DAMAGES |

　　Plaintiff, ERIC MARTINEZ hereby files this Complaint against Defendants, and each of them, and alleges as follows:

## INTRODUCTION

　　1. This is a civil rights action seeking redress for the deprivation of fundamental rights guaranteed, inter alia, by the United States Constitution. Plaintiff Eric Martinez ("Plaintiff" or "Mr. Martinez"), a Marine veteran Hispanic man who had committed no wrong, was subjected to illegal racial profiling, application of excessive force, and unjustified seizure of his person, vehicle, and personal property by Long Beach Police

Department ("LBPD") officers, all without just cause or reasonable suspicion that flowed from Irvine Police Department's ("IPD") failure to personally serve Mr. Martinez an unknown restraining order filed by an ex-girlfriend.

2. It is a basic right of persons in the United States to travel freely without being seized by armed agents of the state without just cause, a right denied to Mr. Martinez because he is Hispanic and was simply requesting that the initiating officer, John Doe 1 ("DOE 1"), confirm whether a restraining order has been issued against him.

3. The initial contact was with officer DOE 1, who was assisted by a fellow officer, Marcos Woods, the significant offending officer. Officer DOE 1, although having condoned, ratified, and supported this manifestly illegal conduct, failed and refused to intervene to stop officer Wood's illegal, unconstitutional, and outrageous conduct.

4. Despite the incident being a non-violent situation, after some discussion with officer DOE 1, officer Woods approached Mr. Martinez and immediately and aggressively detained him with excessive force using handcuffs depriving him of his liberty and further subjecting him to humiliation and embarrassment with arrogance and gross indifference to Mr. Martinez's Constitutional rights. Officer Woods subjected Mr. Martinez to further trauma by an illegal frisk and search, which uncovered no contraband or weapons, and by throwing him into the back of a closed police vehicle despite Mr. Martinez informing the officers that he was severely claustrophobic and suffering from post-military PTSD. The officers failed to request medical assistance in this situation.

5. This terrifying, intrusive, substantial, and unwarranted deprivation of personal liberty and invasion of privacy was a repulsive and unlawful act by officer Woods, and others, of profound humiliation and dehumanization. It was carried out by officer Woods, and others, as a signal and means of subjugation and degradation without any lawful purpose whatsoever.

6. When Mr. Martinez complained of this abuse and his existing medical conditions of claustrophobia and PTSD, he sought the identity of officer Woods and stated his

intention to file a complaint. Officers Woods and DOE 1 threatened and retaliated against him by detaining him further without cause despite being informed by a third unnamed officer, John Doe 2 ("DOE 2"), that Mr. Martinez may not have been personally served notice of an alleged restraining order against him. Officer Woods' response to this information was "...that's not my problem, that's Irvine's problem." Officer Woods, and others, failed to further investigate this issue which could have been easily resolved by either a simple phone call to the IPD or a closer read of the available filed documents in the system, which would have shown that Mr. Martinez was in fact not personally served with the restraining order.

7. Mr. Martinez is informed and believes that the LBPD, upon notice of the abusive, repulsive, and outrageous conduct of officer Woods, and others, did not counsel, reprimand or terminate any of the involved officers.

8. Officer Woods' misuse of the power vested in him by the state (and the acquiescence by the other officers), including being armed, to engage in illegal racial profiling, terrify Mr. Martinez, and subjecting Mr. Martinez to humiliation, degradation, and forced submission, occurred without just cause. No officer who engages in racial profiling, unlawful seizure, and dehumanization, who holds persons in such disregard and has exercised such an abuse of state authority, should be out on the streets carrying a weapon. The failure to counsel, reprimand or terminate officer Woods, and others, evidence the ratification and institutionalized acceptance of this gross misconduct by the LBPD.

9. Further, the above-referenced misconduct by LBPD officers flowed directly from their collective failures to confirm or deny whether Mr. Martinez was personally served with the alleged restraining order, despite begin requested to do so multiple times by Mr. Martinez during the incident. Further, the associated misconduct by the IPD and one of its officers, Gavin Pascarella, was the documented failure to personally serve Mr. Martinez with the alleged restraining order. In fact, on or about September 4, 2021, officer Pasacarella #605, filed a false proof of service notice (DV-200) with the Superior

Court of Orange County Case #Z1LBR001336 stating under penalty of perjury that he had personally served the restraining order documents on Mr. Martinez allegedly via email and verbally, via a telephone conversation, both of which, as all Defendants either knew or should have known, do not constitute lawful personal service.

## NATURE OF ACTION

10. This is an action arising under the United States Constitution and 42 U.S.C. § 1983 ("Section 1983").

11. Officer Woods and others intentionally and maliciously seized Mr. Martinez without just cause, searched him without just cause, and verbally and physically abused him. Officer DOE 1 observed this unlawful and malicious conduct without interceding thereby, among other things, condoning and participating in said conduct.

12. Officers Woods and DOE 1, both with the LBPD then, intentionally and maliciously, and with neither probable cause nor reasonable suspicion, immediately and unlawfully detained and arrested Mr. Martinez with excessive force utilizing handcuffs and overly aggressive physical force severely injuring Mr. Martinez's wrists and hands resulting in a lack of blood flow causing his hands to turn purplish-blue, causing severe painful throbbing and lasting tingling sensations.

13. Officer DOE 2, whose name is presently unknown, although involved in this incident, is not a party to this action. Officer DOE 2 informed officers Woods and DOE 1 that Mr. Martinez was not personally served with the alleged restraining order. In total disregard to their duty and obligation to ensure probable cause was present, officers Woods and DOE 1 willfully and intentionally continued to violate Mr. Martinez's Constitutional rights. This was done to intimidate Mr. Martinez so that he would not, among other things, exercise or seek to punish the officers, for exercising his rights to freedom of speech and freedom to petition the government for a redress of grievances, and in a pretextual attempt to justify their improper conduct post facto.

///

///

## JURISDICTION AND VENUE

14. The Court has jurisdiction over this action because, among other things, the actions/inactions of Defendants, and each of them, violate rights guaranteed by the U.S. Constitution, the issues presented herein involve Federal questions and Defendants reside in or are government agencies of the State of California, County of Los Angeles.

15. Venue is proper in this Court because Defendants are subject to this Court's personal jurisdiction as either residents of or government agencies of Los Angeles County because the actionable conduct or a substantial part of the acts or omissions giving rise to the claims herein occurred in Los Angeles County.

## PARTIES

16. Plaintiff Eric Martinez at all times relevant to this proceeding resided in the City of Irvine, Orange County, California.

17. Plaintiff is informed and believes, and based thereon alleges, that Defendant Marcos Woods, officer #11139 ("Woods"), whom Mr. Martinez sues in his individual and official capacities, is and was at all times relevant to this proceeding, an officer of LBPD. Woods acted at all times relevant herein under color of law and in his capacities as agent and employee of LBPD and the City of Long Beach ("COLB").

18. Plaintiff is informed and believes, and based thereon alleges, that Defendant officer John Doe 1 ("DOE 1"), whom Mr. Martinez sues in his individual and official capacities, is and was at all times relevant to this proceeding, an officer of LBPD. Officer DOE 1 acted at all times relevant herein under color of law and in his capacities as agent and employee of LBPD and the COLB.

19. Plaintiff is informed and believes, and based thereon alleges, that Defendant Robert Luna ("Luna"), whom Mr. Martinez sues in his official capacity, is and was at all times relevant to this proceeding Chief of Police of LBPD.

20. Plaintiff is informed and believes, and based thereon alleges, that Defendant LBPD is the local government agency that employs and employed at all times relevant to this proceeding Woods, DOE 1, and Luna, that administers a set of law enforcement

policies, practices and customs involving the hiring, training, and supervision of its police officers, and covering the use of force and the seizure and search of persons encountered in the course of officers' duties.

21. Plaintiff is informed and believes, and based thereon alleges, that Defendant COLB is the local government that maintains LBPD and, through it, employs Woods, DOE 1, and Luna.

## FACTS

22. Plaintiff is a United States citizen of Hispanic descent and served this country honorably in the Marine Corps from 1996 to 2004. During his military service, Mr. Martinez experienced multiple tours overseas including Iraq and Okinawa. Because of events in the Middle East, Mr. Martinez now suffers from PTSD. Mr. Martinez was honorably discharged.

23. On or around September 11, 2021, at approximately 10:00 a.m., Mr. Martinez, as instructed by the dispatch at LBPD, drove his car from his residence in Irvine towards the LBPD to confirm whether, based on his suspicions from an earlier phone call with his ex-girlfriend, Dawn, had surreptitiously filed for a restraining order against him. What caused him to contact LBPD was his prior history with Dawn who, unbeknownst to him, had filed two earlier restraining orders, but never followed through with them, each being dismissed. Adding to his suspicions was the manner and tone in which she was speaking to him during that morning's phone call. Those indicators led him to suspect Dawn might have filed another unwarranted request for a restraining order.

24. While on his way to the LBPD, Mr. Martinez noticed a LBPD police officer in the parking lot next to a restaurant. The name of this officer is not presently known but shall be properly introduced once ascertained and for purposes of this complaint, this officer shall be known as "DOE 1."

25. Mr. Martinez pulled into the parking lot next to DOE 1's vehicle. Mr. Martinez exited his vehicle and approached officer DOE 1 who was seated in his vehicle.

///

26. Mr. Martinez explained to DOE 1 that he was on his way to LBPD to find out if there was a restraining order filed against him. DOE 1 asked for his name and the name of the other person who may have filed the restraining order. Mr. Martinez complied telling DOE 1 the second named person was Dawn Brough.

27. At this point DOE 1 indicated that he was aware of her name and the earlier phone call. Woods arrived at this time and DOE 1 exited his vehicle and instructed Mr. Martinez to move to the back and remain at the rear of the vehicle and not to move. Mr. Martinez complied but now believed he was being restrained from movement and unable to leave.

28. At no time during the events at issue was there probable cause or reasonable suspicion to believe that Mr. Martinez was committing a crime or even a traffic violation or was in possession of a weapon or of contraband.

29. There was no reasonable suspicion or probable cause or lawful justification to seize or detain and/or forcibly arrest Mr. Martinez.

30. Mr. Martinez was aggressively and forcibly detained and then painfully handcuffed with excessive force given the nonviolent encounter, the basis of racial profiling because of his appearance as a Hispanic man confronting Woods.

31. Mr. Martinez continued to ask Woods why he was being arrested. Woods responded yelling for him to "shut up" and something to the effect that "maybe I'll tell you only after you are handcuffed".

32. Woods returned to his police cruiser for a period of time. During this period, no efforts were made to inspect Mr. Martinez's car for weapons or contraband, or for any other purpose.

33. Woods then returned to Mr. Martinez, who had been standing, painfully handcuffed at the rear of this vehicle, believing he could not leave throughout this entire period without incident.

34. Mr. Martinez continued to ask what he had done wrong.

///

35. Woods appeared angry and aggressive. Woods raised his voice to a yell, drew his face close to Plaintiff's and demanded that he be allowed to search his clothing and body. Woods placed his hand on or near his gun and repeated his demand.

36. Mr. Martinez feared for his safety and his life.

37. Woods demanded that Mr. Martinez not resist his attempted pat down and Mr. Martinez complied with Woods' demand.

38. There was no objectively reasonable suspicion to believe that Mr. Martinez had contraband or was armed or dangerous or posed a risk to the safety of Woods or others.

39. While Woods was engaging in the unjustified detention and arrest, Woods violently kicked out Mr. Martinez's feet, nearly knocking Mr. Martinez over and causing Mr. Martinez to severely spread his legs to the point of groin pain.

40. Woods then subjected Mr. Martinez to an unlawful frisk or pat down and touching of his body. Woods patted down Mr. Martinez's upper body, lower body, and reached into Mr. Martinez's pockets and removed whatever innocuous items he found.

41. While there was no lawful basis to forcibly frisk Mr. Martinez without his consent in the first place, the conduct of this unlawful search further established that there was no reason to believe that Mr. Martinez was in possession of a weapon or contraband.

42. Thereafter Woods turned Mr. Martinez around and frisked him a second time. Again, this second unlawful stop and frisk found no weapons or contraband. It further confirmed that there was no reason to believe that Mr. Martinez was in possession of a weapon or contraband.

43. The police at no time undertook efforts to search Mr. Martinez's vehicle. Woods had no basis for believing that Mr. Martinez had committed any violation of the law and had no basis to believe that he was in possession of a weapon or contraband or any reason to search Mr. Martinez in any manner whatsoever.

44. DOE 1 witnessed the entire incident without intervening.

///

///

Case 2:23-cv-00291-SB-MAA   Document 1   Filed 01/13/23   Page 9 of 17   Page ID #:9

45. Mr. Martinez continued to protest and asked why Woods was arresting him and not contacting IPD to confirm he was not personally served with the alleged restraining order.

46. At no time did Mr. Martinez consent to being searched.

47. Woods just continued without concern.

48. Mr. Martinez persisted in his verbal protest, using words to the effect of, "You can't do this," and, "What you are doing is wrong." Woods responded, in part, by placing his hand on his firearm and telling Mr. Martinez to "shut up" and "you must comply".

49. Mr. Martinez was humiliated by this unlawful and unwarranted arrest. Officer DOE 1 had the opportunity to intervene and chose not to intervene.

50. DOE 1 was under a duty to prevent his fellow law enforcement officer from violating the rights afforded by the U.S. Constitution. DOE 1 had opportunities to intervene and prevent Mr. Martinez's rights from being violated, but instead facilitated and supported the violations.

51. Mr. Martinez continued to verbally protest his mistreatment and to ask questions of both Woods and DOE 1, such as why he had been so aggressively detained and why he had been manhandled and painfully arrested.

52. Mr. Martinez demanded identification information from the police.

53. Woods stated that he had no concern about a complaint being filed against him.

54. DOE 1 told Mr. Martinez to stop asking questions and remain compliant.

55. Woods then slammed Mr. Martinez into the back of the patrol cruiser without regard to Mr. Martinez's body, his painful, tingling wrists and hands, further exacerbating his severe claustrophobia and PTSD distress.

56. Mr. Martinez suffered severe emotional distress and nerve damage to his wrists and hands as a result of the events of September 11, 2021. The unlawful detention, arrest, and excessive search of an innocent man accused of no crime whatsoever by an officer of the law is nothing less than a complete denial of his human dignity. The

9
COMPLAINT FOR DAMAGES

conduct of Woods, and others, was invasive, intrusive, humiliating, degrading, dehumanizing, and terrifying.

57. As a consequence of this extreme and outrageous conduct, made all the more outrageous and terrifying because it was perpetrated with the imprimatur of police authority and the powers of the state to arrest and to use deadly force, Mr. Martinez suffered grievously and severely, resulting in economic and non-economic damages including, but not limited to: depression, loss of interest and ability to engage in day to day activities, fearing to travel, anxiety about whether he would suddenly be stopped, seized and assaulted by police, fearing any future interaction with law enforcement.

58. The misconduct by Woods was severe and extreme; the harm caused was profound. The forced public nature of the officers' unlawful conduct could be perpetrated only by a person with actual malice, the act itself signifies degradation and submission and, in this instance, was motivated not only by malice but by racial profiling, because Mr. Martinez is a Hispanic man who was merely concerned about the existence of an unknown and unwarranted alleged restraining order.

## EXHAUSTION UNDER THE CALIFORNIA TORT CLAIMS ACT

59. Mr. Martinez fully complied with the claim presentation requirements imposed by the California Tort Claims Act (see §§ 905, 945.5) by filing a written claim that was timely presented and acted upon or deemed to have been rejected (§ 945.4) by a rejection letter from the City of Long Beach.

## CLAIMS FOR RELIEF

## COUNT I

Violation of the Fourth and Fourteenth Amendments - 42 U.S.C. § 1983

(Against Officer Woods and Officer John Doe 1)

60. Plaintiff realleges and incorporates by reference each of the preceding paragraphs as if set forth in full herein.

61. The immediate and aggressive arrest, at its inception, was baseless.

///

62. Officers Woods and DOE 1 had no objectively reasonable basis to believe that Mr. Martinez had committed any offense.

63. Plaintiff is informed and believes, and based thereon alleges, that Woods and DOE 1 detained and arrested Mr. Martinez because he was an articulate Hispanic man who was expressing his concerns about an unlawful arrest precipitated by an alleged violation of a restraining order that was not personally served on him.

64. Plaintiff is informed and believes, and based thereon alleges, that the arrest was wrongful and constituted an unlawful, warrantless seizure.

65. At all times relevant hereto, Mr. Martinez had a right, clearly established under the Fourth Amendment to the United States Constitution and enforceable against the States through the Due Process Clause of the Fourteenth Amendment, to be free from unreasonable searches and seizures.  The search and seizure of Mr. Martinez during the subject inquiry violated these rights.

66. On September 11, 2021, officers Woods, DOE 1 and DOE 2 had no articulable facts to support a reasonable suspicion that Mr. Martinez had engaged, was in the process of engaging or was about to engage, in a violation of the law, especially considering the knowledge that Mr. Martinez was never personally served with an alleged restraining order.

67. Wood's detainment, arrest, and the impoundment of Mr. Martinez's vehicle were unreasonable seizures.

68. Woods acted with sufficient malice for punitive damages to be awarded.  Woods acted with actual malice in the decision to arrest Mr. Martinez, the arrest was driven by an improper motive, i.e., racial profiling and/or race-based discrimination.

69. Coextensively, in addition, and/or in the alternative, Woods acted with sufficient state of mind for punitive damages to issue under 42 U.S.C. § 1983.  Woods acted with evil motive or intent or reckless or callous indifference to Mr. Martinez's federal protected rights.

///

70. Woods, who seized Mr. Martinez while acting under color of law, violated Mr. Martinez's rights under the Fourth Amendment to the U.S. Constitution and is liable to Mr. Martinez under 42 U.S.C. § 1983.

71. Officer DOE 1 observed and was aware of this patent violation of Mr. Martinez's rights being perpetrated by his fellow officer Woods. DOE 1 had a duty to intervene to prevent the harm and stop the violation of Mr. Martinez's constitutional rights, he had a reasonable opportunity to do so, and he chose not to. On the contrary, his presence as a law enforcement officer afforded protection to Woods in the event anyone might seek to protest or intervene to cause the cessation of this repugnant course of misconduct and abuse of police authority. DOE 1 is responsible as a bystander for his failure to intervene to protect Mr. Martinez's constitutional rights pursuant to 42 U.S.C. § 1983.

72. DOE 1's presence at the scene affirmatively protected Woods from any potential intervention or protests to protect Mr. Martinez from this public and outrageous action. His physical presence with his police cruiser conveyed official sanction and conveyed the implicit threat that he would use his state authority, including use of force, were anyone to object and try to save Mr. Martinez. DOE 1 is also directly liable for the unlawful detention and arrest as a joint actor, whose presence and conduct facilitated the detention and arrest, rendering him responsible as a principal for the Constitutional violations.

73. DOE 1 acted with actual malice in the perpetration of the unlawful detention and arrest, which was driven by an improper motive, i.e., racial profiling or race-based discrimination. DOE 1 would have stepped up to intervene except for the fact that Mr. Martinez is Hispanic. Coextensively, in addition and/or in the alternative, DOE 1 acted with sufficient state of mind for punitive damages to issue under 42 U.S.C. § 1983.

74. Mr. Martinez suffered damages, including economic and non-economic injuries as a consequence of these violations.

///

///

# COUNT II

Violation of the Fourth and Fourteenth Amendments - 42 U.S.C. § 1983 -

Unreasonable Searches of Mr. Martinez

(Against Officer Woods)

75. Plaintiff realleges and incorporates by reference each of the preceding paragraphs as if set forth in full herein.

76. Each of the two frisks or pat downs, including reaching into Mr. Martinez's pockets, constituted an unreasonable, illegal, and unconstitutional search.

77. On September 11, 2021, Woods had no articulable facts to support a reasonable suspicion that Mr. Martinez had or was in the process of or was about to engage in a violation of the law, that he was armed or dangerous, or any other basis on which to justify the two frisks of his person.

78. At no time was Mr. Martinez under a lawful detention or arrest.

79. Woods acted with actual malice in his unlawful and excessive detention and arrest of Mr. Martinez, which occurred by an improper motive, i.e., racial profiling or race-based discrimination.

80. Coextensively, in addition and/or in the alternative, Woods, and others, acted with sufficient state of mind for punitive damages to issue under 42 U.S.C. § 1983. Woods, and others, acted with evil motive or intent or reckless or callous indifference to Mr. Martinez's federally protected rights.

81. Woods, who searched Mr. Martinez while acting under color of law, violated Mr. Martinez's rights under the Fourth Amendment to the U.S. Constitution and is liable to Mr. Martinez under 42 U.S.C. § 1983.

82. Mr. Martinez suffered damages, including economic and non-economic injuries as a consequence of these violations.

///

///

///

# COUNT III

Violation of the First and Fourteenth Amendments - 42 U.S.C. § 1983 -

Retaliation for Protected Speech

(Against Woods & DOE 1)

83. Plaintiff realleges and incorporates by reference each of the preceding paragraphs as if set forth in full herein.

84. At all times relevant hereto, Mr. Martinez had the rights of freedom of speech and to petition the government for a redress of his grievances under the First Amendment to the United States Constitution and enforceable against the States through the Due Process Clause of the Fourteenth Amendment. These rights encompass the right to complain to public officials, including to police officers when subjected by a law enforcement officer to unreasonable seizure and search and racial profiling.

85. Before, during and after the unlawful detention and arrest, Mr. Martinez had demanded an explanation for and continued to protest Woods' and DOE 1's conduct. He repeatedly informed Woods and DOES 1 of his intention to complain of their mistreatment, of being unlawfully handcuffed, falsely detained and arrested with unnecessary and excessive force.

86. Officers Woods and DOE 1, who were acting under color of law, violated Mr. Martinez's rights under the First Amendment to the United States Constitution and are liable for damages to Mr. Martinez under 42 U.S.C. §1983.

87. Woods and DOE 1 each acted with actual malice, with the wrongful intent to dissuade Mr. Martinez from exercising his right to protest the mistreatment he was forced to suffer and to threaten him for questioning the officers and protesting the patently unlawful detention and arrest.  Coextensively, in addition and/or in the alternative, Woods and DOE 1 each acted with sufficient state of mind for punitive damages to issue under 42 U.S.C. § 1983.  Woods acted with evil motive or intent or reckless or callous indifference to Mr. Martinez's federally protected rights.

///

# COUNT IV

Failure to Train or Supervise - 42 U.S.C. § 1983 - Negligent Failure to Train, Supervise, or Discipline

(Against Luna, LBPD, COLB)

88. Plaintiff realleges and incorporates by reference each of the preceding allegations as if set forth in full herein.

89. COLB and LBPD are liable pursuant to 42 U.S.C. § 1983 for the failure to train their officers not to engage in abusive unlawful arrests on the basis of racial profiling.

90. The need for training to eradicate the aforementioned unlawful conduct is not only generally known but is required. Race-based detentions and arrests are a known course of conduct by law enforcement having manifest potential for causing constitutional deprivations to persons based on race, in this instance because Mr. Martinez is Hispanic.

91. The failure by COLB, Luna and LBPD to train officers against race-based discrimination in detention and arrests was so profound that, as part and parcel of the racial profiling against Mr. Martinez, Woods did not merely subject Mr. Martinez to unlawful detention and arrest, but to an act of degradation and dehumanization that can only occur if an officer holds a deep-rooted racial bias against the people he is to serve, and believes that his conduct has at least the tacit approval of his employer, that approval conveyed in part by the failure to train. Likewise, DOE 1's failure to intervene reflects that Woods' racial profiling and extreme misconduct is not aberrational, but part of a culture and institution which tolerates such conduct. The failure to train officers against racial profiling by LBPD and the failure to train, supervise and discipline officers were moving forces behind the racial profiling, detention and arrest in this matter.

92. The need for training to prohibit the unlawful acts is obvious, as the authority granted to police officers to search is subject to limitation without which constitutional violations are certain to occur.

///

93. Luna's, LBPD's and COLB's failure to train constituted deliberate indifference and caused the constitutional violations and injuries complained of herein.

94. Further, on information and belief, Mr. Martinez alleges Woods had a reputation for misconduct so pervasive that, when Mr. Martinez reported that Woods had been involved in the incident, the watch sergeant at LBPD receiving the complaint indicated a lack of surprise. Woods himself indicated a lack of concern about having a complaint filed against him.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

a) An award of compensatory damages against Woods, DOE 1, COLB, LBPD and Luna in an amount to be determined at trial;

b) An award of punitive damages against Woods and DOE 1 in an amount to be determined at trial;

c) An award of Plaintiff's costs and reasonable attorneys' fees in this action pursuant to 42 U.S.C. §§ 1983 and 1988;

d) Appropriate injunctive relief, including the implementation of training protocols to prevent and effectively discipline the conduct complained of herein; and,

e) An order granting such other relief as this Court deems just and proper.

///
///
///
///
///
///
///
///

# DEMAND FOR JURY TRIAL

Plaintiff requests trial by jury as to all issues in this case.

TUNG & ASSOCIATES, APLC

Dated: January 13, 2023    By: _____
Antony K. Tung
Robert A. Freeman
Attorneys for Plaintiff Eric Martinez